***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The defendant is a duly qualified self-insured, with Corporate Claims Management as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. On October 14, 2002, plaintiff had a motor vehicle accident arising out of and in the course of his employment for the defendant-employer.
5. Plaintiff's employment was terminated by defendant-employer on October 17, 2002.
6. Plaintiff's average weekly wage is $800.00, yielding a compensation rate of $533.36.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born July 9, 1944 and attended high school through the twelfth grade, but did not receive a high school diploma.
2. After high school, plaintiff drove a truck for a bakery. From 1969 through 1975, plaintiff worked at a penitentiary and also drove a truck part-time. Plaintiff began driving a truck full-time in 1975.
3. Plaintiff started driving a truck for defendant-employer in 1989. Plaintiff's dedicated run was from Sidney, Ohio to Shelby, North Carolina and back. Plaintiff drove this run two times per week and, rarely, three times per week.
4. On October 14, 2002, plaintiff was driving north on U.S. 221 in North Carolina. He was about an hour into his return trip when he "blacked out" and ran off the road.
5. Plaintiff does not remember going off the road. The first thing he remembers is seeing trees coming at him through the windshield of the truck, and feeling the truck shaking.
6. One of the trees that broke through the windshield ended up resting close to plaintiff's head.
7. Plaintiff got out of the truck and crawled up the side of a hill. His hands and arms had blood on them, and blood was running down his face.
8. EMS, the highway patrol, and Scott Hobson, an insurance adjuster for Crawford Company, came to the scene of the accident.
9. Plaintiff was taken to the Emergency Room by Scott Hobson in order to submit to a urine test and breathalyzer, which are mandated by the U.S. Department of Transportation. The results of the tests were negative.
10. Plaintiff refused to be admitted to the hospital for treatment because he wanted to get home to Ohio.
11. On the night of the accident, defendant-employer provided for plaintiff to stay in a motel. When plaintiff got to the motel, he noticed that he had injuries on his legs, chest, rib cage, and face.
12. The next day, defendant-employer provided for plaintiff to be transported back home to Ohio. While plaintiff was being driven back to Ohio, he still felt "shook up" from the accident.
13. When plaintiff arrived home, his wife noticed that he was bruised all over his body, including under his eye and across his chest. She also noticed that he was limping and shaking. Plaintiff continued to shake for hours after arriving home. Thereafter, plaintiff still appeared to be "shook up," and his attitude and personality seemed different than before the accident.
14. On October 17, 2002, defendant-employer terminated plaintiff's employment.
15. On October 17, 2002, plaintiff went to see his family doctor, Dr. Leo Escobedo. Dr. Escobedo noted that plaintiff had various injuries, including left eye bruising and hemorrhage, superficial wounds on both hands, right leg swelling, and bruising on his right rib cage and right leg.
16. Dr. Escobedo referred plaintiff to various specialists to determine what might have caused plaintiff to "black out" while driving his truck on October 14, 2002. Dr. Escobedo did not release plaintiff to return to work at that time.
17. Plaintiff was evaluated by Dr. Godwin, Dr. Almudallal, and Dr. Sundaram to determine whether he had a medical problem that would have caused him to "black out." None of these specialists were able to find such a problem. Plaintiff was also evaluated by Dr. Terebuh for his eye injury.
18. On November 20, 2002, plaintiff was evaluated by Dr. Young Wung Rhee, a psychiatrist. Dr. Rhee diagnosed plaintiff with depressive disorder and anxiety disorder, and recommended psychotherapy and medication.
19. Plaintiff returned to Dr. Escobedo on October 21, 2002, November 21, 2002, and December 23, 2002.
20. On December 23, 2002, plaintiff asked Dr. Escobedo to release him to go back to work. Dr. Escobedo would not release plaintiff back to regular duty work, but he did agree to release plaintiff to driving a truck, so long as he did not drive a "semi" truck or drive long distances.
21. After Dr. Escobedo released him to return to work, plaintiff attempted to find work driving short distances. Plaintiff contacted several companies and filled-out several applications, but was unable to obtain employment.
22. On July 14, 2003, plaintiff returned to Dr. Escobedo with right elbow pain, which he had been having on and off since his accident. Plaintiff informed Dr. Escobedo that he had no health insurance and could not afford to be referred to an orthopedist. Dr. Escobedo diagnosed plaintiff with lateral epicondylitis and possible carpal tunnel syndrome. Plaintiff also reported feeling slightly depressed, and reported insomnia and panic in crowds. Plaintiff informed Dr. Escobedo that he could not afford to go to a psychiatrist. Dr. Escobedo recommended Paxil, and gave plaintiff some Paxil samples.
23. In August or September of 2003, plaintiff got into a friend's truck to see how he would feel driving a truck. His heart started racing when he got behind the wheel. Since then, plaintiff has felt that it would be unsafe for him to drive a truck.
24. As of the date of the hearing, plaintiff could not function mentally as he did before the accident. He is forgetful, and feels that he is "not thinking straight." He does not sleep well, and still has dreams about the accident where he sees trees coming at him. He also thinks about the accident during the daytime.
25. On February 5, 2004, plaintiff was evaluated by Dr. Dong Moon, a psychiatrist. Dr. Moon diagnosed plaintiff with post-traumatic stress disorder, major depression and panic disorder resulting from the October 14, 2002 truck accident.
26. Dr. Moon testified that plaintiff is not capable of safely working as a truck driver, and that plaintiff should not work at all until he has received treatment for his depression and panic attacks. Dr. Moon recommended that plaintiff obtain psychiatric treatment, including treatment through medication and counseling.
27. The greater weight of the competent evidence of record establishes that plaintiff's accident on October 14, 2002 either caused his current psychological condition or aggravated a non-disabling pre-existing condition resulting in plaintiff's current psychological condition.
28. The greater weight of the competent evidence of record establishes that plaintiff has been temporarily totally disabled since October 14, 2002 due to his physical injuries from the accident and/or his psychological condition resulting from the accident.
29. Plaintiff requires treatment for his psychological condition, including medication and counseling.
30. Plaintiff's idiopathic condition, combined with the dangers of his employment, caused plaintiff's injury.
31. Plaintiff received unemployment benefits following the termination of his employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On October 14, 2002, plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. §97-2(6). When an injury is caused by an idiopathic condition that together with the dangers inherent in the employment cause an injury, the injury resulting there from is compensable. Allred v. Allred-Gardner,Inc., 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960).
2. As a result of the compensable injury, plaintiff is entitled to total disability compensation at the rate of $533.36 per week for the period from October 14, 2002 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Defendant is entitled to a credit for the unemployment benefits received by plaintiff for any week he is entitled to total disability compensation under the N.C. Workers' Compensation Act. N.C. Gen. Stat. §97-42.1.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including medication and counseling for his psychological condition. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee approved below and any credit owed defendant for unemployment benefits, defendant shall pay total disability compensation to plaintiff at the rate of $533.36 per week for the period from October 14, 2002 and continuing until plaintiff returns to work or until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including medication and counseling for his psychological condition.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
4. Defendant shall pay the costs due the Commission.
This the 24th day of February, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER